### WILLIAMS et al. v. WHITE et al.

(Circuit Court of Appeals, Eighth Circuit. November 10, 1914.)

No. 4138.

INDIANS (§ 27*)—INDIAN LANDS—POSSESSION—RECOVERY—POWER OF ATTORNEY.

A power of attorney, executed by the surviving husband and sole heir of a full-blood Choctaw allottee, himself a full-blood Indian, conferring on the grantees the right to possession, profits, etc., of the allotment, whether valid or invalid, was insufficient to entitle the grantees to maintain ejectment to recover possession in their own names.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 19, 20; Dec. Dig. § 27.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Ejectment by Eli P. Williams and others against William R. White and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Napoleon B. Maxey, of Muskogee, Okl., for plaintiffs in error.

J. E. Whitehead, of McAlester, Okl., for defendants in error.

C. C. Herndon, Asst. U. S. Atty., of Muskogee, Okl., in support of the judgment below.

Before HOOK and CARLAND, Circuit Judges, and REED, District Judge.

HOOK, Circuit Judge. This was an action in ejectment to recover possession and the rental value of lands in Oklahoma which had been allotted and patented to Mary Charley as a full-blood member of the Choctaw Nation of Indians. The plaintiffs Williams claim under written instruments, called powers of attorney, executed by David Charley, the surviving husband and sole heir of the allottee, deceased, and by them. The trial court sustained a demurrer to their petition, and rendered judgment for the defendants. The question argued is whether the instruments are contrary to the restrictions upon the disposition of such lands contained in the acts of Congress. The government was allowed to present a brief in opposition to the plaintiffs.

The patents to the allottee were issued in 1905. The instruments in question were executed April 20, 1907. Section 15 of the Choctaw Supplemental Agreement provides that lands allotted to members "shall not be affected or incumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall said lands be sold except as herein provided." Section 16 provides that lands allotted to members, excepting homesteads, shall be alienable, one-fourth in acreage in one year from date of patent, one-fourth in three years, and the balance in five years, for not less, however, than its appraised value, if before the expiration of the Choctaw and Chickasaw tribal governments. Act July 1, 1902, c. 1362, 32 Stat. 641. Section 22 of the act of April 26, 1906 (34 Stat. 137, c. 1876), authorizes the sale and conveyance of inherited allotments by adult heirs, subject to the approval of the Secretary of the Interior in case the heirs are full-blood Indians. David Charley, the heir, was an adult and a Choctaw Indian of the full blood. No approval by the Secretary of the instruments in question appears.

Each of the instruments is in eleven sections. The first section gives the plaintiffs, as agents of David Charley, full, sole, and absolute power to do any and all acts, at any time, that he could lawfully do with reference to the inherited lands. By the second he assigns, transfers, and delivers to them all rights to possession and improvements, and agrees within three years to put them in actual and absolute possession, they to advance him $50 on the instrument, and should he fail to furnish possession they are authorized to acquire it, and to do what in their opinion is necessary to that end. They agree to rent, manage, and look after the same. They are given full, sole, and absolute authority to col-

lect and receive all moneys, rents, and income, and are to account to him for the same during his life, and to his heirs, executors, and administrators after his death, less expenses and 8 per cent. on collection for services. He agrees not to assign or transfer any part of the income. By section 3 he sells and transfers to them "an absolute interest in fee simple in all of the rents," and in all of the improvements, and he agrees that "this power of attorney is coupled with an interest in all of said rents and improvements." Section 4 is:

"I hereby sell, convey, and transfer to my agents an absolute interest in fee simple in all and any part of said lands that I can lawfully sell or alienate."

By section 5 they are given "full, sole, and absolute power," whenever he would be qualified under the law, to sell and convey the lands in fee simple on such terms and conditions as they see fit, for cash or on time, and to receive the proceeds. By section 6 the instrument is to continue in full force until December 31, 1939, and is not to be terminated by his prior death. Section 7 provides that the survivor or survivors of the plaintiffs shall have sole and absolute power. By section 8 they are given full, sole, and absolute power to bring or defend, in their names or in his, at their option, lawsuits relating to the lands and improvements and the income therefrom, and to dismiss the same. By section 9 it is agreed that the $1 named in section 1 and the $50 to be paid under section 2 are valuable and sufficient considerations to make all the parts of the instruments binding obligations upon him, and also upon the lands, improvements, and income. Section 10 provides .that, if any one or more of the provisions of the instrument should be declared void or inoperative, the legal force and effect of the balance shall not be affected. In section 11 the instrument is made irrevocable, except upon agreement of all the parties.

It is quite apparent that the instruments contain much that is contrary to the letter and spirit of the acts of Congress. Though following the ordinary form of power of attorney by a person sui juris, they attempt to put aside the government's guardianship, to take from the Indian, its ward, the possession of his property, and to deprive him of all voice in its disposition. They even attempt to make their power irrevocable without their consent, as though they had an interest in the estate itself. The allotment of tribal lands in severalty and the restraints upon alienation and incumbrance were intended by Congress to instill into the Indians habits of thrift and industry and a sense of independence, and to protect them in the meantime from improvident contracts. To uphold the instruments as framed would clearly frustrate the object of the legislation which should not be narrowly or shrewdly construed. The plaintiffs evidently intended to go the whole length, if the instruments were not attacked, and, if attacked, then as far as they could. Their validity being questioned, counsel therefore invoke the doctrine respecting the separability of legal from illegal provisions in a contract. We need not consider whether those asserting an instrument of such evident scope and purport can impose upon a court the duty to sift out and sustain for their benefit the features that are

not objectionable. It is sufficient to say that, if any part of the instruments is valid, it would not authorize plaintiffs to maintain in their own names an action like this against the defendants. So many devices had been adopted to defeat the intent of the acts of Congress respecting Indian allotments that by section 5 of the act of May 27, 1908 (35 Stat. 312, c. 199), it was declared:

"That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, and also any lease of such restricted land made in violation of law before or after the approval of this act shall be absolutely null and void."

The case at bar does not require the application of this statute. The judgment is affirmed.